Our first case on the agenda is No. 21, No. 129-031, Carmen Galaza v. Freddy Gurat, Guirachocha. Counsel for the appellant, are you prepared to proceed? May it please the court, I'm honored to be here today. My name is Sam Scheles. I represent Direct Auto. Just to correct the name of the case, as you remember, there were really two appellate court cases and one was sent back. This is Guirachocha v. Direct Auto, the bicycle case. The other case was sent back as not being final. So although they were argued together, this appeal and this PLA only came from the Guirachocha case. What we ask for you today to do is adopt the reasoning from Insurer v. Steele, which is that Section 143 should only be interpreted to require uninsured motorist coverage where liability is required under mandatory insurance. And that follows the amendment that used the words motor vehicles designed for use on the public highway. At the end of the day, we ask that you reverse the appellate court because they did not, in our view, consider that change. We all agree in the briefs that Mr. Guirachocha was riding a bicycle. We all agree in the briefs that the bicycle is not entitled to liability coverage to third parties. Bicycles, of course, cause accidents sometimes, and Mr. Guirachocha did not buy a bicycle insurance policy. We also all agree in the briefs that a bicycle is not a motor vehicle and it's not designed for the use on a public roadway. For those primary reasons, we believe that uninsured motorist coverage is not required. Now, I emphasize to you, there's no dispute this policy doesn't cover a bicyclist for uninsured motorist. Learning Council's argument is the policy is invalid for public policy reasons. It is normally the insurer's burden to show that someone fits within the policy. Here they acknowledge they don't. They simply say the policy is invalid, and we argue to you today that it is perfectly valid. Let me compare what I think most people think of when they think of the change in the statute, which is ATVs, all-terrain vehicles, and golf carts. All-terrain vehicles and golf carts are motorized vehicles, but they're not designed for the use on a public highway, and therefore there's no mandatory insurance that applies to them, and therefore no UL. I have a question. Under the public policy contention, if the public policy at issue is protection against uninsured motorists, should it make a difference whether the victim is in an automobile or on a bicycle or on foot? Yes. Why? Because our uninsured motorist and liability statute is structured differently than other states. That's why I cited the Rosenberg case. In that state, their public policy is that uninsured motorist coverage covers everybody, even if they're not occupying a vehicle, and includes pedestrians and other types of non-motorized vehicles. The public policy of Illinois comes from Section 143 and 7203. Let me add a sub-part to my question. What is the basis of the public policy in Illinois for uninsured motorists? What's the underlying principle that the public policy is trying to protect? It is trying to protect occupants of vehicles who are hit by uninsured motorists. Occupants mean passengers and drivers. It is not intended for anyone else. Its purpose, we know, since the amendment, was to exclude things that are not motorized vehicles and not intended for the use in the public roads. So if the primary insured, Chris's father, had been riding a bicycle and was struck by a motor vehicle, he wouldn't be covered? Absolutely not. Absolutely not. Because Section 143 can only be understood in context of 7203, which is the mandatory insurance. And the mandatory insurance statute indicates, as we all know, that, and I just want to get the exact language, that it's designed for use in the public highways or required to be registered in the state or principally garaged in the state. In other words, it doesn't apply to bicycles. And the reason that's so important is, let's say Chris's father was riding a bicycle, and let's say he crossed the center line and caused an accident, which does happen, or he left a bike lane and hit somebody. We don't sell liability insurance for bicycles. So he would not be covered under liability insurance. Under the reasoning of both Section 143A and Insurer v. Steele, he therefore would not be covered for uninsured motorists, because uninsured motorists and liability are like twin sisters. And if I could use this analogy, they're not identical twins, but they're twin sisters. And here's why. Uninsured motorist coverage is close to liability coverage, but not quite. And there's one example. A car crosses the center line, totally at fault, but there's no physical contact between the uninsured car and the insured car. We all acknowledge actual physical contact under the Benedetto case, there's no U.N., but there would be liability. Another example, of course, is the fleet vehicle. Fleet vehicles have to have liability insurance, but they're exempt from U.M. Uninsured motorist is close, but not quite, to liability insurance. But I'm not aware of a case, and I don't think any has been cited, where the court extended U.M., uninsured motorist, beyond liability. It is true in other states they do that, is why I cited the Rosenberg case in answer to your question. In Rosenberg, their statute explicitly expanded U.M. to pedestrians and other types. And here's what's interesting. Let's assume a pedestrian is guilty of negligence. You know, he runs across the street and causes an accident or hits a car, doesn't happen often, but it could. Nobody is claiming in the state of Massachusetts that a pedestrian has liability insurance, but they've extended U.M. beyond liability. In this state, we haven't. When you look at Section 143, it refers you directly back to 7203. So the bottom line of my argument is, if there's no mandatory insurance on a bicycle for liability to third parties, we're not required to issue uninsured motorist coverage for that vehicle. But in a situation where Chris was hit by this motorist and the motorist stopped, so we know who it is, and they have insurance, then certainly Chris would be able to pursue an action against the driver, right? Absolutely, yes. And so if the driver stopped and the driver does not have insurance, isn't it good public policy that the auto insurance policy of his father would cover any injuries because this is an uninsured motorist that hit him? I'm going to answer no, and here's why. This is a policy whose purpose and premium is to insure automobiles. And when Section 143 was amended, they purposely amended it to limit the obligation to motorized vehicles intended or manufactured for the use of the public roadway. When we use the word public policy, and I mean no disrespect to my learned friend's brief, he's giving you the public policy he wishes the statute said. But it doesn't say that. It's limited to what the legislature said. Uninsured motorist is a non-common law coverage created by the legislature. And the further answer to your question comes from Founders v. Munoz. In Founders v. Munoz, the case I often litigate in the Chancellor's Division, a person who has no license can be excluded from coverage. And what this court said is, in response to that case, it's true. There are people that are injured, that are not at fault, and there's no coverage. Because there is no guarantee of coverage for every conceivable accident, no matter what. There are exclusions to policies. There are terms of policies. And if this policy doesn't violate Section 143 or 7203, then that should be the end of the inquiry because public policy is what the Uninsured Motorist Statute says. And what counsel is asking you to do is extend it because a young person was injured on a bicycle. I understand that one is sympathetic to that, but it doesn't change the fact that we didn't issue bicycle insurance. And it doesn't change the fact that 7203 and 143A were amended purposely for this purpose to cut back and limit uninsured motorist coverage. What about the Squires case? That was a pedestrian, right? Mr. Garrococo wasn't riding in an automobile. And that follows the Merck's case, which was another direct auto case, although I didn't argue that one. But in the Merck's case, the court said, we are going to require you to have mandatory insurance for occupants of vehicles. In other words, the passenger and the driver. Once again, that language, occupant of a vehicle, is how uninsured motorists and the mandatory insurance statute in this state are structured. Other states, it is true, have a different structure, but not Illinois. And for those reasons... Counsel, I know that you've mentioned a couple times in your argument that the Illinois statute specifically excluded coverage for vehicles that were not intended for use on the roadway. You mentioned ATVs, golf carts. Is there a difference, though, in the change in the statute to address that because ATVs and golf carts not only aren't intended, but they aren't permitted? Yes, there's a recent case called Burrs v. Evanston, 2013, which we cited. The dissenting opinion by then-Justice Gordon asked an important question, although we argue the majority opinion, which is the law, is correct. But he asked an important question following what you said. He said, if you look at a bicycle and they're on a bike lane or they're on a street or wherever they are, are they a permitted user, are they an intended user, or is it designed for the use on a public roadway? A bicycle may be a permitted user of a bike lane, but it is not designed for the use on a public roadway, and that's the statute's standard. If the legislature had intended... I hate to use the pun because it's the word intended, but if the legislature had wanted to change the statute to say a motorized vehicle intended for use on the roadway, it'd be different. What is in common with an ATV, a bicycle, and a golf cart is they're not manufactured for the use on a public roadway. And generally, except for rural statutes in places like Michigan and Wisconsin, they're not really a permitted or intended user of public highways. But a bicyclist that has no ability to protect himself from a vehicle to require us to essentially give insurance to a bicyclist is a vast expansion of uninsured motorists in this state. Let me also point out in Exhibit 2, which is the deck page to this policy, Exhibit 2, the deck page, our insurance policy is 200 and some dollars. And you may say, why does that matter? It matters because the legislature decided when it passed mandatory insurance and then amended it with this amendment to allow for a limited scheme of uninsured motorists and mandatory insurance in this state. Whether that public policy is a good one, as counsel argues it's not, is up to the legislature. The reason the insurance is so inexpensive is this is a competitive insurance market where we have very limited obligations on the carrier of what we have to put into policy. Under Section 919.50, the Administrative Section for Insurance, there are three or four things we have to put in and there are three or four things they won't let us put in. None of that regulates this issue. And the reason is Section 143 and 7203 do not require us to cover mandatory insurance for anyone except an occupant of a motor vehicle designed for use on the public island. I think I finished early, but I'd like to, if that's allowed, I don't want to be punished for it, but I will reserve my time for rebuttal if you'll allow me to do that. Thank you very much, counsel. Counsel, good afternoon. Good morning and may it please the court. Good morning, counsel. Good afternoon. My name is Jonel Mataj and I represent the accolades, Christopher and Freddie Gierkocher. Your Honors, this case is already decided by the public policy, the statute, and the prevailing case law in our state. The public policy of Illinois is to protect members of the public from injuries caused by motor vehicles. The financial responsibility law mandates that every vehicle for use or registration in the state of Illinois has to have insurance. Now, our legislature enhanced this public policy. They enacted Section 143A to protect the public from injuries caused by uninsured and hit-and-run motors. Uninsured motorist coverage is mandatory and an insurance company cannot deny coverage to its insurers. The purpose of uninsured motorist is to place the insured, and I will repeat this word over and over again today, insured, to place them in the position he or she would be had the at-fault party carried the requisite amount of insurance required by our state. The intention is to provide insurers who they themselves have complied with the financial responsibility law a means of recovery under their own policy. This is not the public policy of Illinois that I wish would be. This is what the public policy of Illinois is, as defined by this court in its decisions and as defined by the appellate courts in their decisions. We can first look at the language of the statute itself. It's clear and unambiguous. No policy issuing against loss from liability shall be issued unless coverage is provided for the protection of persons insured thereunder who are legally entitled to recover damages from uninsured and hit-and-run vehicles. Look at how broad that is. The statute says persons insured thereunder, not motorists, not vehicles, but persons insured thereunder. However, the language of the statute itself does not limit coverage to insurers who are operating a motor vehicle or who are occupying a separate vehicle. The language selected by the legislature was purposeful, and the language provides for expansive coverage to persons insured thereunder. Christopher, a person insured under this policy as a resident relative of his father Fred, was struck by a hit-and-run motor vehicle. The intent of the statute is to protect insureds in this exact scenario. So the use of a motor vehicle language contained in 143A, who is that talking about and what does it mean? That's talking about the uninsured motor vehicle, Your Honor. We are required to have insurance for liability. There is a motor vehicle that, in this scenario, was uninsured who struck Christopher, an insured under the policy. So we have the use of an uninsured, a uninsured vehicle who struck Christopher, a person insured thereunder. Now, the legislature certainly could have excluded pedestrians, bicyclists, passengers. We know they know how to write exclusions. There is an own vehicle exclusion written in the statute. But it chose not to because the intent is to provide expansive coverage, not to limit it. Excuse me, I want to make sure you hear everything I'm saying. Section 143A and public policy unequivocally require that an insured, whether walking, biking, driving, riding, is entitled to uninsured motorist coverage under his own policy if they are hit by an uninsured motor vehicle. Now, the argument that pedestrians are not explicitly mentioned in the statute, it's irrelevant. It doesn't have to mention them specifically. They are encompassed by the words insured thereunder. If I can direct you to the case of Ryan v. State Farm, this was a fleet pool vehicle scenario where State Farm argued that because the police officer had access to the police vehicle, therefore, that was part of the exclusion that's written in the statute. The insured argued that, well, the policy and the statute, they don't specifically say fleet or pool vehicles. And the court said it's irrelevant. It doesn't have to. They are encompassed. Similarly here, they are encompassed as insureds under the policy. The provision in the direct auto policy, it conditions coverage on an insured, occupying, uninsured vehicle. This affords insureds less coverage than the legislature intended. Direct auto is placing restrictions on coverage that contravenes the intention of the expansive insurance our legislature wants to provide the general public. Counsel, what about this argument? Well, Illinois is structured different from some of these other states where we have cases and respond to that. I think the Illinois statute itself is written broadly on purpose. It's structured differently, but it's structured so that it is broad to expand coverage as opposed to limiting it. We know of one limitation in Section 143A, and that's the owned and undeclared vehicle policy. However, the language itself is clear, and as I will discuss in a couple of minutes here, the courts have interpreted to be expansive, to provide coverage as opposed to limiting it. So Illinois, the legislature, purposefully wrote our statute to be broad as opposed to limiting coverage. Now, in addition to public policy and the language of the statute itself, we can look at the case law that supports that uninsured motor vehicle coverage needs to be expansive. Three years ago, the second district in MERS found the exact language by the same carrier to be unenforceable as against public policy, and I want to be clear on this. It wasn't similar provision or similar wording. It was the exact same provision by Direct Auto in their policy. The court there, the second district, citing this court in Squire, stated that it is well sound that Section 143A requires coverage of insured persons regardless of the motor vehicle the insured is driving and regardless of the vehicle in which the insured person is located when injured. Now, counsel wants to argue that, Direct Auto wants to argue that, in that scenario, it requires a vehicle. But again, let's not forget, Squire was a pedestrian. Squire hinged on whether the insured could stack two policies. Similar to this. Not the exact same language, but similar. And the court said, you cannot condition an insured to occupy an insured vehicle. It's unenforceable. It violates public policy, and that is why Squire, a pedestrian, was able to recover under the primary policy and the endorsement. Squire is controlling here. This court emphasized in Squire that the legislative intent of Section 143A was to provide extensive uninsured motorist coverage protection for those who are insured thereon. This court decided 45 years ago that insured pedestrians can recover under their own uninsured policy. In cases like Barnes v. Powell, Thousand Valleys v. State Farms, Schultz v. Illinois Farmers, this court found exclusions in these policies to be unenforceable, giving Section 143A an expansive interpretation. And that expansive interpretation is that coverage applies to insureds generally. This court stated that if a person constitutes an insured for purposes of liability coverage, an insurance company may not either directly or indirectly deny coverage to that insured. The policy provision in the direct auto policy here is nothing more than an exclusionary tactic, which the courts in our state have consistently struck down as contrary to the public policy. In Dockstader v. State Farms, the 2nd District held that an exclusion of no coverage, if not in your own motor vehicle, conflicted with the underlying purpose of Section 143A. The Dockstader court, in analyzing the case law regarding uninsured motorist coverage, stated that presented with the issue at bar, our Supreme Court would interpret Section 143A of the insurance code as a direction to insurance companies to provide uninsured motor vehicle coverage for insureds, regardless of whether, at the time of injury, the insured occupied or operated vehicles declared in the subject policy. It does not matter where the insured is. If they are insured under the policy and they are hit by a motor vehicle that's uninsured, coverage applies. Counsel, I just want to make sure we're clear. So are you arguing that there is coverage, or are you arguing that there should be coverage based on public policy? Sure. To be clear, there should be coverage, and the provision in the direct auto policy should be found unenforceable due to public policy reasons. And the courts have interpreted the statute and all the case laws suggest that provisions like the one here, that condition coverage on occupying the insured vehicle, violates that public policy, and coverage should apply. So you agree that Christopher is not covered under the policy, but you're saying based on public policy he should be? Because he is an insured, he is covered under the policy, and that provision cannot exclude him from the mandatory coverage. He is a resident relative, so as an insured under the policy, the mandatory coverage under Section 143A applies to him, and the direct auto cannot directly or indirectly deny that coverage to him with that clause. So he's insured, but the policy doesn't provide coverage, and the basis for not providing coverage violates public policy. That's your argument. Correct. Similar case law that extended coverage to pedestrians. Hartford v. Holada, Progressive v. Liberty Mutual, Gillen v. State Farm, cases cited in the briefs. All these cases cited that pedestrians can recover under their uninsured motor vehicle coverage. The courts in our state have consistently struck down exclusions in uninsured motorist provisions that limit coverage to insurers. Furthermore, in the cases cited, pedestrians have recovered damages under their policies when hit by uninsured or hit-and-run motorists. This court and the appellate courts have made it abundantly clear. Section 143A is broad and encompasses insurers regardless of whether they are a driver, a pedestrian, or a passenger. Counsel previously mentioned the Rosenberg case, which is a First District case in Illinois. I want to specifically discuss that case because it does not stand for the position that direct auto believes it does in their briefs. Rosenberg hinged on the fact that the person that was injured was not an insurer. He was a resident in a senior living facility. The senior living facility had the insurance policy. The injured party is not a relative of the senior living facility. Therefore, he could never qualify as an insurer. The same applied to the Stark case that counsel cites here. The central issue was, is the injured party an insurer? If that doesn't apply, then there's no need to continue on with the analysis. And in fact, the courts don't analyze whether pedestrians can recover because the injured parties were not insurers. The Rosenberg case, however, did state, this court is obligated to ensure that individuals insured by uninsured motorist policies receive that coverage when injured by uninsured motorists. A clear statement providing extensive coverage without qualifications. And I also want to make one more point regarding the risks of bicyclists on the road. Bicycles are used on the roads. There are specific bike lanes. There are specific streets that allow bicycles on the right-hand side to travel in. There's a difference between coverage applying and the insurance company actually paying out on the claim. Coverage can apply. However, the insured still has the burden of proof to show that the injuries were caused by the uninsured motorist and that that accident was the proximate cause of their injuries. So just because coverage applies doesn't mean the insurance companies have to pay a single cent. And again, if Freddie is driving his vehicle and he hits a bicyclist, his policy would cover it. So direct auto has contemplated the risk of bicyclists and pedestrians on the road. They know that they will have to provide coverage to those individuals. Now, it would be improper to deny Freddie or Christopher the uninsured coverage when they are walking or biking down an Illinois roadway. The public policy of Illinois, again, is to protect members of the public injured by motor vehicles. The broad language of the statute and the prevailing case law all point towards providing extensive coverage as opposed to limiting it. Uninsured motorist coverage guarantees the protection of an injured insured against the possibility that a tortfeasor over whom they have no control purchases inadequate amounts of insurance or has no insurance at all. Enforcement of a provision such as the one here in direct auto will harm the public because those legally insured under a policy would have no recourse for injuries caused by uninsured or hit-and-run motorists. It will set a frightening precedent in our state. It will be a race to the bottom between insurance companies to see who can exclude the most coverage while still collecting other policies to the detriment of the public at large. The exclusion here punishes the law-abiding citizens of our state who themselves have complied with the financial responsibility law and yet are injured by somebody who has not. This is not what the public policy of Illinois aspires to be. And this is why the courts in our state have consistently struck down exclusions that impermissibly limit coverage in uninsured motorist cases. Section 143A is broad to encompass all persons insured there under. This is how the legislator intended to protect the public. This is how the courts have interpreted the public policy. Applying the exclusion to Christopher in this case would impermissibly thwart the legislative purpose behind Section 143A by foreclosing him from being placed in the same position he would occupy had the hit-and-run motorist carried the minimum required insurance under the law. The First District reached a correct conclusion here. The policy provision contravenes public policy and is therefore unenforced. And if there are no further questions, I also finished early, but I don't think I need to belabor the point any further. Thank you very much, Counsel. Counsel in the back. May it please the Court in rebuttal. This is not a case about an exclusion. Part 1 of the policy indicates that persons insured are respected to the owned automobile, the non-owned automobile, or an automobile they're responsible for. Second, and this is page C46, persons insured under UM are caused by accident while you're an occupant in an automobile. This is not an exclusion case. This is a case involving the terms of the policy. To answer your question, Your Honor, it is solely a case where Mr. Garrococo claims that our provisions violate public policy. There is no doubt they're not covered under this policy. So is your position that Christopher is not insured? He's not an insured? He is not an insured under Part 1 or Part 2 because the definition of an insured relates to the occupation of a vehicle. And that relates to our requirements under mandatory insurance, which are limited to occupants of a motor vehicle designed for the use in a public highway. In other words, we're not required to go beyond that because that's what the statute says. So my argument is this is not an exclusion. It's a term of the policy. Learned Counsel has a high burden under the case law to overturn a contract under public policy provisions. Secondly, he read you the exact words from Merck's. Occupying or operating a motor vehicle we must cover. We agree with that. If you occupy or you operate a motor vehicle that is designed for the use in a public highway, we owe you U.M. coverage or we owe you liability coverage. In Merck's, Direct Auto tried to argue, unsuccessfully, that the word occupy a vehicle can be limited to the owned vehicle. They failed. However, in making the decision, the court very clearly said you must cover persons that occupy a vehicle. Mr. Garrococo was not occupying a vehicle. There is absolutely no dispute that bicycle was not a motor vehicle and it was not a motor vehicle designed for the use on a public roadway. So counsel's citation to Rosenberg, let's talk about Rosenberg. They went on to say, again following your Honor's exact question and analysis, in Rosenberg they said is the person insured? But they went further and said now let's look at it from a public policy perspective. Are they required to insure a pedestrian? And Rosenberg said under the Illinois statute they are not required to insure a pedestrian. So we don't need to get there. Now there's a point I made in the beginning about the two cases so I want to clarify that. The other case that was sent back was a pedestrian case. This is a bicycle case. They were argued together by not just this lawyer but other lawyers also. They were considered together but the court didn't rule on the pedestrian. So we're not asking you for a ruling on whether a pedestrian is covered under UM because that's not before us. All that's before us is the bicyclist. But what's key about a bicyclist and what's key about the argument here is the reason Insurer v. Steele says what it says, that it makes no sense to interpret Section 143 except in reference to 7203, is uninsured motorists only exist in relation to liability. When counsel says Mr. Garricoco was an insured, well if you look at Part 1, he's an insured for the purpose relating to the owned automobile, the non-owned automobile, or a person responsible for the use of an automobile. It goes on to say arising out of the ownership, maintenance, or use of the owned or non-owned automobile. A non-owned automobile. That's page C13, that's cover J, Part 1. He is not Mr. Garricoco. Mr. Garricoco, the son, is not an insured for any of those purposes. If he were an occupant in the vehicle, as a resident of the household, he would indeed be an insured for the purposes of Part 1. If he were a passenger in the vehicle, he would indeed be an insured for the purposes of Part 1. If he were, unfortunately, a 14-year-old driving a vehicle, hopefully not, he would be an insured for the purposes of Part 1. But, riding a bicycle, he is not an insured for the purposes of Part 1. And he certainly is not an insured for the purposes of Part 2. So when Learned Counsel says that Mr. Garricoco is an insured, that doesn't finish the sentence. One has to look at Part 1 and Part 2. And to follow the analysis of Rosenberg and Steele, it is undisputed that he's not covered. The only argument my opponent has is you should invalidate this policy. That is the only argument that is really before you. And I would emphasize that's a very high burden to invalidate a policy. The Department has approved this policy for a decade. It does not violate Section 919.5 of the Administrative Code. And it does not violate Section 143 because we are not required to offer insurance to bicycles. There may be a day we will. There may be a day Section 143 is expanded like in other states. But for today, Section 143 is a non-common law section. And I did want to emphasize a question that Your Honor asked. I discussed the Burrs v. Evanston. My time is about to be expired, but I'll just finish with this case. To follow up your question, in Alave v. The City, the court distinguished between a bicyclist and a pedestrian. And it asked a similar question to the former Justice Gordon asked. Is a bike a permitted user, an intended user, or manufactured for the use? Our statute uses the word manufactured for the use. And there is no dispute by learning counsel that a bike, a kid's bike, is not manufactured for the use on a public roadway. That's the standard we ask you to use. We respectfully ask you to reverse. I'm going to conclude with a personal note. I have been a lawyer for over 30 years. This is the first time I've had the opportunity to address this High Court. It's been a privilege and an honor to do so, and I thank you. Thank you both for your argument. This case, agenda number 21, number 129031, will be taken under advice.